IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Hugo Gonzalez-Martinez, ) | |
| ) | |
| Petitioner, ) | Case No. 8:11-cv-00437-TMC-JDA |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Darlene Drew, Warden, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

This matter is before the Court on Respondent's motion to dismiss or, in the alternative, for summary judgment. [Doc. 21.] Petitioner is a federal prisoner, proceeding pro se, who seeks relief pursuant to Title 28, United States Code, Section 2241. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on February 24, 2011. [Doc. 1.] On June 24, 2011, Respondent moved to dismiss the Petition or, alternatively, for summary judgment. [Doc. 21.] On June 27, 2011, in accordance with an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), Petitioner was advised to respond to the motion and of the possible consequences if he failed to adequately respond to Respondent's motion. [Doc. 22.] Subsequently, on August 1, 2011, Petitioner filed a response in opposition to the motion. [Doc. 24.] Respondent filed a reply in support of her motion on August 11, 2011 [Doc. 26], and Petitioner filed a sur-reply on September 1, 2011 [Doc. 28].

Having carefully considered the parties' submissions and the record in this case, the Court recommends that Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is currently incarcerated at the Federal Correctional Institution ("FCI") located in Bennettsville, South Carolina. [Doc. 1 at 2.] He is serving a 90-month term of incarceration imposed by the United States District Court for the Southern District of Iowa for possession with intent to distribute cocaine and for illegal reentry into the United States. [*Id.*; Doc. 21-1 ¶ 3.] Petitioner seeks "Full restoration of Petitioner's Good Credit Time loss and expungement of the incident report, or any other relief the deems appropriate in this case." [Doc. 1 at 9.]

On June 10, 2010, Petitioner received an incident report charging him with "Possession, manufacture of weapon, sharpened instrument." [Doc. 21-2.]. Specifically, the report charged that during a search of cell 223 in Unit A-4, the reporting officer found a five-inch sharpened piece of metal under the wall locker. [*Id.* at 1] Petitioner resided in cell 223. [*Id.*] The written incident report was delivered to Petitioner on June 20, 2010. [*Id.*]

An investigation was conducted, and the matter was referred to the Unit Discipline Committee ("UDC"). [*Id.* at 2.] Because of the nature of the charges, the UDC referred the matter to a Disciplinary Hearing Officer ("DHO"). [*Id.* at 1.] Petitioner was advised of his rights before the DHO. [Doc. 21-3 at 1.] The DHO hearing was held on June 23, 2010. [Doc. 21-4 at 1.] At the hearing, Petitioner made a statement to the DHO, claiming the weapon was not Petitioner's. [*Id.* (providing a summary of Petitioner's statement).]

Petitioner declined to call any witnesses [Doc. 21-3 at 2; Doc. 21-4 at 1] and waived the presence of a staff representative at the hearing [Doc. 21-3 at 2; Doc. 21-4 at 1]. However, a staff representative provided a written statement that was considered by the DHO. [Doc. 21-4 at 1, 4].

After consideration of the evidence, the DHO found Petitioner committed the prohibited act as charged. [*Id.* at 2.] The DHO imposed the following sanctions: disallowance of good conduct time of 40 days, loss of visiting privileges for 365 days, loss of commissary privileges for 365 days, and disciplinary segregation for 30 days. [*Id.*]

Petitioner filed a grievance concerning this matter on August 2, 2010. [Doc. 21-1 ¶ 11], which was rejected for being filed at the wrong level [*id.* ¶¶ 9–11]. On August 5, 2010, Petitioner filed a grievance at the regional level [Doc. 21-1 at 6 & ¶¶ 10–11], which was rejected as untimely filed twice at the regional level and once at the national level [*id.* ¶ 10]. Thereafter, Petitioner filed this action on February 24, 2011. [Doc. 1.]

## **APPLICABLE LAW**

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could

3

prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Motion to Dismiss and Motion for Summary Judgment Standards**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). If on a motion pursuant to Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(d).

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all

4

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

Because Respondent, in her motion, presented to the court matters outside the pleadings, which the Court did not exclude, Respondent's motion to dismiss for failure to state a claim shall be treated as one for summary judgment.

## DISCUSSION

**Exhaustion and Procedural Bar**

Although 28 U.S.C. § 2241[1] does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under § 2241. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490–91 (1973) (requiring exhaustion in a § 2241 matter); *Timms v. Johns*, 627 F.3d 525 (4th Cir. 2010) (noting courts require "exhaustion of alternative remedies before a prisoner can seek federal habeas relief" (internal quotation marks omitted)). Exhaustion allows prison officials to develop a factual record and "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). Any arguments not advanced at each step of the

---

[1] "A motion pursuant to § 2241 generally challenges the *execution* of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) (citing *Chambers v. United States*, 106 F.3d 472, 474–75 (2d Cir. 1997)).

6

administrative appeal are procedurally defaulted. *See Moffat v. Broyles*, 288 F.3d 978, 981–82 (7th Cir. 2002). Moreover, if a prisoner cannot obtain an administrative remedy because of his failure to timely appeal at the administrative level, then the prisoner has procedurally defaulted his § 2241 claim, *see Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3rd Cir. 1996), *cited with approval in Watkins v. Compton*, 126 F. App'x 621, 622 (4th Cir. 2005); *Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994), unless the prisoner can demonstrate cause and prejudice for the failure, *Moscato*, 98 F.3d at 761.

The Federal Bureau of Prisons ("BOP") has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to confinement. The BOP's Administrative Remedy Program is generally a four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to informally resolve his complaints with staff. 28 C.F.R. § 542.13. Then the inmate may submit a formal "Administrative Remedy Request" to the warden; the inmate must attempt informal resolution and submit the "Administrative Remedy Request" within twenty calendar days of the event giving rise to his complaint. *Id.* §§ 542.14(a), (c)(4). An inmate who is not satisfied with the warden's response may appeal the decision within twenty days to the Regional Director.[2] *Id.* § 542.15(a). The inmate may appeal the Regional Director's decision within thirty days to the General Counsel. *Id.* The administrative process is exhausted when the General Counsel issues a ruling on the

---

[2] An exception to the four-step procedure is provided for appeals of actions taken by a DHO, in which event, "DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. 542.14(d)(2). This exception allows the inmate to bypass filing an appeal at the institution level, with the appeal needing to be reviewed only at the Regional and Central Office levels.

inmate's final appeal. *Id.* ("Appeal to the General Counsel is the final administrative appeal.").

Here, the DHO action was completed on June 29, 2010, and Petitioner received a copy of the written report on June 30, 2010. [Doc. 21-1 ¶ 11.] Accordingly, Petitioner had until July 20, 2010 to submit an appeal to the Regional Director. *See* 28 C.F.R. §§ 542.14(a), (c)(4), (d)(2). Petitioner did not attempt to file a grievance concerning the matter until August 2, 2010. [Doc. 21-1 ¶ 11.] That grievance was filed at the institution level and was rejected with direction to submit the appeal of a DHO decision directly to the Regional Director. [*Id.* at 6 & ¶¶ 7–10 (showing the grievance had an "-F1" extension, indicating the filing was at the institution level); Doc. 24-2 at 1; *see* 28 C.F.R. §542.14(d)(2).] On August 5, 2010, Petitioner filed a grievance with the Regional Director. [Doc. 21-1 at 6 & ¶¶ 7–10 (showing the grievance had an "-R1" extension, indicating the filing was at the regional level).] That grievance was rejected twice at the regional level and once at the national level as being untimely filed. [*Id.* ¶ 10; Doc. 24-1 at 2.] Accordingly, because Petitioner failed to timely file his grievance at the administrative level, his claims are procedurally barred from review by this Court unless Petitioner can establish cause and prejudice for failing to timely file at the administrative level. *See Moscato*, 98 F.3d at 760–61.

Although Petitioner does not specifically use the terms cause and prejudice, he argues the administrative filing periods should be tolled because (1) he relied on bad advice from his correctional counselor; (2) he had no access to forms when he was in SHU; (3) he could not obtain a statement from his cell mate until his cell mate was released from SHU; and (4) BOP's policy is unclear about how to appeal a DHO action. [Doc. 24.] The Court construes these arguments as Petitioner's allegations regarding cause and prejudice.

However, the Court need not determine whether Petitioner has established cause and prejudice for failing to timely file his grievance at the administrative level because even assuming, without deciding, the Petition is not procedurally barred, the Court recommends that Respondent's motion for summary judgment be granted and the Petition be denied on other grounds, as discussed below.

**Merits of Claim**

Petitioner argues

> the Disciplinary Hearing Officer (DHO) abused its discretion and violated Petitioner's 'due process' rights to fair resolution, when it found Petitioner guilty of being in possession of a weapon or the manufacturing thereof. Addi[]tionally, the DHO was not impartial when it gave greater weight to the allegations made by the reporting officer, without first fully examining the record and fully conducting a fair hearing as required by law.
>
> In this instant, Petitioner was brought before the DHO for a hearing on the alleged charges, without conducting a hearing, the DHO advised Petitioner and his cell-mate to discuss and come to an agreement as to who really was in possession of the weapon. Petitioner and his cell-mate were escorted to their cells in the []SHU, what they thought would be temporary, only to discover that the DHO conducted the hearing in absentia and found that Petitioner and his cell-mate guilty and were each sanctioned unfairly without effectively allowing Petitioner to establish his innocence in the alleged infraction.
>
> ***
>
> In this equation, Petitioner was never afforded the opportunity to present a defense to alleged charges, he was simply found guilty in abscentia. His position is supported by the record, Petitioner was placed in segregation, sanctioned unfairly without due process for an infraction that he did not commit. Petitioner's cell-mate's affidavit will establish that Petitioner is actually innocent of being in possession of a weapon as[] alleged by the reporting officer. The BOP mandates that the DHP prepare a record of proceedings that

> sufficiently documents (1) that the inmate was advised of his rights, (2) of the DHO findings and (3) the specific evidence relied on[] in reaching its decision. The BOP, also requires the DHO to call witnesses who have information directly relevant to the charges, and that the DHO must consider all evidence, included but not limited to affidavits and confessions, before giving any greater weight of evidence presented by staff. Moore v. Plaster, 266 F.3d 928 (8th Cir. 2001), where the Court held that 'statement of the reporting' officer alone is insufficient evidence to infer that a prohibited act has been committed.

[Doc. 1-1 at 5–7.]

Certain procedural safeguards apply when loss of statutory good time credit is at issue. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). In *Wolff*, the Supreme Court set out the requirements for due process in prison disciplinary hearings:

1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. Providing the prisoner a written statement by the fact finder(s) as to the evidence relied on and reasons for the disciplinary action;

3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. Providing impartial fact finders.

*Id.* at 563–76. Additionally, DHO findings revoking a prisoner's good time credit must be supported by "some evidence in the record." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454–56 (1985). The Court in *Hill* declined to adopt a more stringent evidentiary standard as a constitutional requirement, stating:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id.* at 456. The "some evidence" standard is a lenient one, requiring no more than "a modicum of evidence," and is met if there is any evidence in the record that could support the decision. *Id.* at 455–56; *Baker v. Lyles*, 904 F.2d 925, 932 (4th Cir. 1990) ("Nor does [requiring some evidentiary basis to revoke good time credits] imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review."). This standard requires "only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). As the Court in *Hill* noted:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

472 U.S. at 455–56.

A review of the record reveals that the due process requirements stated in *Wolff* were observed in this case. Although Respondent concedes Petitioner's written notice was not received twenty-four hours before the initial proceeding [Doc. 21 at 7], Petitioner waived 24-hour notice and elected to proceed with the hearing [Doc. 21-4 at 5]. Moreover, the initial hearing was postponed [*id.* at 1], and Petitioner received written notice of the charges and hearing on June 11, 2010 [Doc. 21-3 at 2], well over twenty-four hours before the DHO hearing on June 23, 2010 that resulted in sanctions against Petitioner [Doc. 21-4 at 1].

Petitioner was provided a copy of the DHO report [Doc. 21-4], which includes information about the evidence relied on and the reasons for the disciplinary action, on June 30, 2010 [*id.* at 3]. Before the hearing, Petitioner was advised of his right to call witnesses, to present documentary evidence, and to have a staff representative at the hearing. [Doc. 21-3 at 1, 2; Doc. 21-4 at 1.] Petitioner declined to call witnesses. [Doc. 21-3 at 2; Doc. 21-4 at 1.] Although Petitioner initially indicated he wished to have Mr. Strange from Facilities appear as Petitioner's staff representative [Doc. 21-3 at 2; Doc. 21-4 at 1], Petitioner later waived the right to a staff representative [Doc. 21-3 at 2; Doc. 21-4 at 1] and proceeded with the staff member's written statement instead [Doc. 21-4 at 1, 4].

With respect to the partiality of fact finders, Petitioner has produced no evidence to establish the fact finders were impartial. Although Petitioner alleges the DHO "was not impartial when it gave greater weight to the allegations made by the reporting officer, without first fully examining the record and fully conducting a fair hearing as required by law," Petitioner's conclusory allegations alone are insufficient to preclude the granting of summary judgment. *See Ross*, 759 F.2d at 365. Moreover, the record establishes the DHO examined the record and conducted a hearing. [Doc. 21-4 (indicating the DHO considered the written statement by a staff member serving as a character witness for Petitioner, Petitioner's own statements, the reporting officer's written statement, eyewitness accounts, and photographs of the weapon in the cell).] Accordingly, Petitioner was afforded all due process requirements under *Wolff*.

As previously stated, judicial review of prison disciplinary actions is limited solely to a determination of whether there is some evidence in the record to support the DHO's decision. Here, there is some evidence in the record to support the DHO's decision that

12

Petitioner was in possession of a weapon, namely a photograph of the weapon along with an electronic message from the reporting officer indicating the weapon was located under a locker in Petitioner's cell. Moreover, Petitioner does not deny the weapon was found in his cell, and inmates are put on notice that they are responsible for ensuring their areas are free from contraband. 28 C.F.R. § 541.12, Inmate Responsibilities #4 ("It is your responsibility . . . to keep your area free of contraband."); see *McClung v. Hollingsworth*, No. 06-6699, 2007 WL 1225946, at *3 (4th Cir. Apr. 26, 2007) (holding that constructive possession satisfies the "some evidence" standard necessary to sustain a disciplinary finding against an inmate for items found in his cell). Therefore, the evidentiary standard of *Hill* is satisfied in this case.

To the extent Petitioner alleges he is entitled to relief based on a claim of actual innocence, a claim of actual innocence is not a basis for federal habeas corpus relief. *See Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000). "The due process clause does not require later consideration of evidence that could have been but was not presented during a prison disciplinary proceeding." *Jones v. McCaughtry*, 6 F. App'x 371, 372–73 (7th Cir. 2001) (citing *McPherson v. McBride*, 188 F.3d 784, 786–87 (7th Cir. 1999)). Instead, courts look only to whether a prisoner received the procedural protections due under the Constitution and "subsequent tender of additional evidence is irrelevant to [the] due process determination." *Id.* at 373 (citing *McPherson*, 188 F.3d at 787). As previously stated, Petitioner was afforded the due process requirements under *Wolff*, and some evidence supports the DHO's decision; accordingly, Respondent's motion for summary judgment should be granted, and the Petition should be denied.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>United States Magistrate Judge

December 16, 2011
Greenville, South Carolina